Filed 12/19/14  P. v. Alvarez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064417 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS255343) |
| KARIM JOSUE ALVAREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Edward P. Allard, III, Judge.  Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Karim Josue Alvarez of first degree murder (Pen. Code,[1] § 187, subd. (a)).  The jury found true allegations that the crime was committed for the benefit

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

of a criminal street gang (§ 186.22, subd. (b)(1)) and that Alvarez personally discharged a firearm during the commission of the offense (§ 12022.53, subds. (d), (e)(1)). Alvarez admitted he was on bail for a felony offense at the time he committed the current crime.

The court sentenced Alvarez to an indeterminate term of 50 years to life plus two years for the on-bail enhancement.

Alvarez appeals contending the trial court erred in admitting a picture of a pistol which was on a computer used by Alvarez. He contends the picture was not relevant and that he was prejudiced by its introduction at trial. Although the picture introduced was of marginal relevance, there was no conceivable prejudice to Alvarez, given the murder was captured on video; he admitted being the shooter and admitted he had carried a weapon for some time prior to the crime. Accordingly, we will affirm the judgment.

STATEMENT OF FACTS

At about 9:00 p.m. on March 14, 2012, Alvarez and David Chavoya went to a liquor store in Chula Vista. Both Alvarez and Chavoya were members of the West Side Locos street gang. Chavoya entered the store first.

Once inside the store, Chavoya encountered several members of the Vario Chula Vista street gang, including James Rodriguez, the victim in this case. All of the events that followed, including the killing of Rodriguez, were captured on the store's video surveillance system.

Chavoya got into a dispute with the members of the rival gang and was chased out of the store. Chavoya called for help from Alvarez.

2

Alvarez entered the store and attempted to punch Rodriguez, however Rodriguez fought back and Alvarez ran out into the parking lot with Rodriguez in pursuit.

Once in the parking lot, Chavoya attempted to stab Rodriguez, but was unsuccessful. Alvarez told Chavoya to get back into the car, which he did. Alvarez pulled a gun and began shooting at Rodriguez and the latter attempted to run away. Rodriguez was shot and fell to the ground. Alvarez continued to shoot Rodriguez while he was on the ground and hit him two more times.

Alvarez ran away from the scene and was picked up by Chavoya around the corner from the shooting scene. Alvarez and Chavoya then fled to Mexico where they were later apprehended.

### Defense

Alvarez testified in his defense. He said he had purchased the gun used in the killing from a homeless man prior to the shooting. He claimed he shot Rodriguez in self-defense because he thought Rodriguez was pulling something out of his pocket.

### DISCUSSION

#### A. Background

During the investigation in this case police discovered shell casings at the scene of the shooting, but did not find the murder weapon. Expert examination of the casings and a bullet found at the scene revealed the weapon was either a .40 caliber Smith and Wesson or a Walther P99. Both fire the same caliber ammunition and have similar rifling characteristics.

3

A search of a computer used by Alvarez produced a number of pictures of gang-related activity and a picture of a P99 pistol, which was not contended to be the same weapon used, but rather a picture of the same type of weapon. In limine, Alvarez objected to the use of the picture of the pistol, but not to the gang-related pictures. The trial court overruled the objection and permitted the prosecution to use the picture to show the gun was of the same design and form as the potential murder weapon. The trial court found the picture of the type of weapon that may have been used was relevant to malice aforethought and self-defense.

## B. Standard of Review

When we review an evidentiary ruling of a trial court we do so under the abuse of discretion standard of review. (*People v. Cox* (2003) 30 Cal.4th 916, 955.) We will not overturn such ruling absent a clear showing of abuse of the court's discretion. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

## C. Analysis

The parties disagree as to whether the picture of the gun was relevant and whether there was prejudice to Alvarez by its admission. We start with the issue of admissibility. Ordinarily evidence of a defendant's possession of a weapon is admissible if it is relevant to the proof of the charges. (*People v. Homick* (2012) 55 Cal.4th 816, 876.) Photographs of a gun that could have been used were found relevant by the court in *People v. Champion* (1995) 9 Cal.4th 879, 924. Even when the picture is of a weapon that was not the one used it can be relevant in a given case. (See *People v. Smith* (2003) 30 Cal.4th 581, 613-614.)

4

Evidence Code section 210 defines relevance as: " 'Relevant evidence' means evidence, including evidence relevant to credibility of a witness or hearsay declarant, having a tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."

It is somewhat of a stretch to say this picture of the gun on a computer tends to prove much of consequence in this case. However, the motion was heard in limine, before Alvarez's testimony that he had a gun and carried it prior to the killing. Thus there is some relationship between the picture and Alvarez's interest in and knowledge of the Walther P99. Given that it is undisputed the murder weapon fired .40 caliber bullets and could have been either a Smith and Wesson model or a Walther P99, the picture is not wholly irrelevant. Certainly the picture proves little or nothing about malice or self-defense. It does, however, have some "tendency in reason" to show knowledge of and interest in a weapon of the type of the potential murder weapon.

Although we concede the relevance of the picture is not great, the prejudice from its introduction is nonexistent.

Alvarez, a gang member who admitted owning the murder weapon, shot Rodriguez to death on video, while the victim was crawling away. The fatal shot was to the back. We cannot conceive how a picture of a gun, which could be of the same type as the murder weapon, added even the slightest prejudice to this trial. It is simply not disputed that Alvarez possessed the murder weapon in advance. As to self-defense, the murder was committed on video and the jury could see it take place. Shooting the victim to death, while he crawled away does not fit any form of self-defense with which we are

5

familiar.  The fact that Alvarez may have seen a picture of a pistol at some time prior to the killing was not prejudicial in this case under any appropriate standard.

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.